UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BRENDA HOGAN and RIPAWS, INC.,

*Plaintiffs,*

vs.

WALTER BARLOW, JR. AND THE CITY OF EAST PROVIDENCE,

*Defendants,*

C.A. No. 06-149T

**DEFENDANTS' PRETRIAL MEMORANDUM**

## I. PARTIES

| | |
|---|---|
| Plaintiffs: | Brenda Hogan and RIPAWS, Inc. |
| Plaintiff's Attorney: | Bernard Healy, Esq., 750 East Avenue, Pawtucket, RI 02860 |
| Defendants: | Walter Barlow, Jr. and the City of East Providence |
| Defendants' Attorney: | Marc DeSisto, Esq., 211 Angell Street, P.O. Box 2563, Providence, RI 02906 |

## II. FACTS

The City of East Providence is responsible for the East Providence Animal Shelter (hereinafter "animal shelter"). Prior to the events giving rise to the instant complaint, there had been a history of acrimony, caused by disputes over authority and the division of duties, between the volunteers and the staff at the animal shelter of East Providence. There were a series of East Providence Police Department liaisons assigned to the animal shelter. There was a great deal of publicity over the longstanding disputes and problems at the animal shelter.

In 1996, Brenda Hogan, (hereinafter "Plaintiff" or "Ms. Hogan"), volunteered to help with fundraising at the animal shelter.[1] At that time, she was part of a group called Volunteer Services for Animals, (hereinafter, "V.S.A."). Ms. Hogan assumed the role of volunteer coordinator in 1999. In 2000, Ms. Hogan formed her own volunteer group called East Providence Volunteers Saving Animals (hereinafter, "E.P.V.S.A."). Ms. Hogan and E.P.V.S.A. did not have written contract to administer volunteer services at the East Providence Animal Shelter. Ms. Hogan merged E.P.V.S.A. into Plaintiff, RIPAWS, Inc., after she was terminated from the animal shelter.

During Ms. Hogan's tenure with the animal shelter, she employed different means to obtain her objectives relative to the animal shelter operations. She would go beyond the animal shelter liaisons to the Chief of Police in order to override decisions of the liaisons or to make a complaint. She would contact the Mayor or Town Council members. She appeared on the Town Council docket to discuss conditions at the animal shelter. The City of East Providence never denied Ms. Hogan an opportunity to place her name and/or organization on the docket to appear before a hearing of the Town Council.

During Ms. Hogan's tenure at the animal shelter, in addition to easily reparable problems relating to maintenance and repair of the facility, the Rhode Island Department of Environmental Management (hereinafter "D.E.M.") repeatedly cited the animal shelter for violations of law relating to: incomplete, inaccurate, and contradictory animal log forms which resulted in the unrecorded disposition of animals and unrecorded locations of foster outplacement; incomplete or unavailable rabies vaccination acknowledgement forms signed by adopting parties, incomplete, inaccurate and/or contradictory spay/neuter contracts; discrepancies relating to

---

[1] As a volunteer at the animal shelter, Ms. Hogan did not receive remuneration from the City of East Providence for her animal shelter activities.

medical waste containers and open and unlabeled antibiotics; discrepancies relating to the isolation and quarantine of animals; leaving food outside the shelter for strays; and, overcrowding.

During Ms. Hogan's tenure with the animal shelter, there were complaints of discrimination towards prospective animal adopters. Relationships with local care providers and veterinarians were threatened. Some care providers and outreach groups refused to offer their services to the animal shelter.

During Ms. Hogan's tenure, the volunteer office was used to house cats overnight. Cats were allowed to roam outside of their cages. At one point, there was a problem with kennel cough, an upper respiratory infection. Animal shelter animals were taken out of state, to pet fairs in Seekonk, Massachusetts. There were disagreements over medical treatments for animals.

During Ms. Hogan's tenure there were complaints of discrimination by the volunteers. There were complaints of rude and obnoxious behavior by Brenda Hogan and the volunteers. There was a complaint of harassment against Brenda Hogan.

In February of 2002, Walter Barlow, Jr., (hereinafter "Defendant" or "Captain Barlow"), was assigned as liaison for the animal shelter. In May of 2002, he started an investigation into the activities of the animal shelter. In July of 2002, he published a summary report of over one hundred pages, in which he recommended the immediate termination of the volunteer group currently affiliated with the animal shelter.

On September 6, 2002, Paul Lemont, the City Manager for East Providence terminated Ms. Hogan as a volunteer at the animal shelter after receiving notification by D.E.M. that the animal shelter had not complied with a D.E.M. consent agreement.

After her termination from the animal shelter on September 6, 2002, Ms. Hogan continued to involve herself with the animal shelter. Ms. Hogan continued to post East Providence Animal Shelter animals on her website for adoption, at a price that was higher than the cost for someone to go directly to the animal shelter to adopt the animals.

Ms. Hogan became associated with Kim Casci and her sister, Pier Toledo, through their involvement with the animal shelter. Ms. Hogan arranged for Ms. Casci to be a liaison with the animal shelter, and try to get Ms. Hogan's volunteer group reinstated.

Ms. Casci worked with Captain Barlow at the animal shelter.[2] Between September 6, 2002, Ms. Hogan's termination date, and April 12, 2003, Captain Barlow and Ms. Casci communicated regularly in the form of emails and telephone conversations. Captain Barlow indicated to Ms. Casci that he was aware of State and municipal investigations into the activities of Ms. Hogan and her volunteer group relating to the animal shelter.

Ms. Hogan and her volunteer group, including Ms. Casci and Ms. Toledo, met regularly to discuss their animal shelter volunteer activities and fundraising. Ms. Hogan also wrote emails on the subject of her problems and complaints about the animal shelter. Her emails included disparaging remarks about Captain Hogan, the Chief of Police, the City Manager and the animal shelter. The volunteer group would openly discuss and strategize over the communications between Captain Barlow and Ms. Hogan.

Publicity about the animal shelter operations continued within the community. On March 27, 2003, Janice Meek Griffin wrote a letter to the East Providence Post concerning animal shelter operations. <u>See</u> *Exhibit A, "Letter from Janice Meek Griffin"*. On April 10, 2003, Captain Barlow sent a letter in East Providence Post. <u>See</u> *Exhibit B, "Letter from Captain Barlow to the*

[2] On March 3, 2003, Paul Lemont, City Manager terminated Kim Casci and Volunteers Saving Animals from their involvement at the animal shelter since they were again attempting to establish control and policy at the animal shelter.

*East Providence Post".* In April of 2003, Captain Barlow posted a letter on the internet. See *Exhibit C, "Letter from Captain Barlow on the Internet".*

The animal shelter volunteer group, including, at a minimum, Ms. Hogan, Ms. Casci, and Ms. Toledo, decided to tape the telephone conversations between Captain Hogan and Ms. Casci. Ms. Hogan provided the tape recorder to Ms. Casci, so that she could tape her conversations with Captain Barlow.

On April 12, 2003, Ms. Casci taped a conversation with Captain Barlow. This conversation occurred on a Saturday morning at 9:26 a.m., when Captain Barlow was not on duty. See *Exhibit D, "Partial Transcript of April 12, 2003 Telephone Conversation between Captain Barlow and Kim Casci".*

The volunteer group, including, at a minimum, Ms. Hogan, Ms. Casci and Ms. Toledo agreed to release the tape to reporter, Jim Taricani, of Channel 10 News. At no time prior to the deliberate release of the tape to Jim Taricani, Channel 10 News, did Ms. Hogan file a police report about the tape to the East Providence Police Department[3], the Rhode Island State Police Department, or any other police department.

On or about December 2, 2005, Plaintiffs, Brenda Hogan and RIPAWS, Inc., filed the instant Complaint against Defendants, Walter Barlow, Jr. and the City of East Providence, alleging claims, pursuant to 28 U.S.C. §1983, of a violation of First Amendment rights, as well as state law claims of libel/defamation and intentional infliction of emotional distress. The case was removed to the United States District Court of Rhode Island on March 31, 2006.

Plaintiffs allege the infringement of First Amendment rights as a result of the taped telephone conversation between Captain Barlow and Kim Casci (Exhibit D). Plaintiffs allege

---

[3] Ms. Hogan did not complain to her brother, a Captain with the East Providence Police Department, about the taped conversation of April 12, 2003 prior to releasing the tape to Jim Taricani.

libel/defamation in the form of Captain Barlow's April 10, 2003 letter to the East Providence Post (Exhibit B), Captain Barlow's letter on the internet of April 2003 (Exhibit C), and the taped telephone conversation of April 12, 2003 (Exhibit D). Additionally, Plaintiff Brenda Hogan alleges emotional distress as the result of the alleged incidents.

## III. DEFENSES:

1. Plaintiffs cannot show that her First Amendment rights under the United States Constitution were infringed upon by the taped conversation between Walter Barlow and Kim Casci.
2. The City of East Providence is not liable under 28 U.S.C. §1983 for Plaintiffs' claims of a violation of her First Amendment rights caused by the taped conversation between Walter Barlow and Kim Casci.
3. The statements of Walter Barlow published in the East Providence Post were not false and defamatory.
4. The statements of Walter Barlow published on the internet were not false and defamatory.
5. The statements of Walter Barlow in the taped conversation between Walter Barlow and Kim Casci were not false and defamatory.
6. The Plaintiff knowingly published the taped conversation between Walter Barlow and Kim Casci to Jim Taricani, Channel 10 News.
7. Plaintiff's claims of emotional distress under Count 3 stem from the same set of circumstances described in her claims under Counts 1 and 2.
8. The Plaintiff cannot prove she suffered from physical symptoms of emotional distress.

## IV. DAMAGES

These Defendants are claiming no damages against these Plaintiffs at this time.

## V. ISSUES

1. Did the taped conversation of April 12, 2002, between Captain Walter Barlow, Jr. and Kim Casci, infringe upon Brenda Hogan's First Amendment rights relating to whether or not she attended a Town Council meeting on April 15, 2002?

2. Is the City of East Providence liable under 28 U.S.C. §1983 for Plaintiffs' claims relating to the alleged infringment of First Amendment rights relating to attending a Town Council meeting on April 15, 2002?

3. Did the letter written by Captain Walter Barlow, Jr. in the context of responding to Janice Meek Griffin's letter to the editor, contain false and defamatory statements about Brenda Hogan and/or RIPAWS, Inc.?

4. Did the letter on the internet written by Captain Walter Barlow, Jr. in the context of responding to Janice Meek Griffin's letter to the editor, and to a letter from RIPAWS, Inc. contain false and defamatory statements about Brenda Hogan and/or RIPAWS, Inc.?

5. Did the taped telephone conversation between Captain Walter Barlow Jr. and Kim Casci contain false and defamatory statements about Brenda Hogan and/or RIPAWS, Inc.?

6. Does the fact that Plaintiff Brenda Hogan voluntarily published the taped telephone conversation to Jim Taricani, Channel 10 News preclude her claims of defamation relating to the taped telephone conversation?

7. Does Brenda Hogan have a viable claim for emotional distress.

## VI. ARGUMENTS AND DISCUSSION

*A. Count I-42 U.S.C. §1983– First Amendment Rights*

Although Plaintiffs' Complaint is somewhat vague, under Count I, Plaintiffs, Brenda Hogan and RIPAWS, Inc, allege claims against Defendants, Captain Walter Barlow, Jr. and the City of East Providence, pursuant to 28 U.S.C. §1983 alleging a violation of First Amendment rights under the United States Constitution as a result of the taped telephone conversation that took place between Defendant Captain Walter Barlow, Jr. and Kim Casci on April 12, 2003 (Exhibit D).

Ms. Hogan claims that the taped telephone conversation between Captain Barlow and Kim Casci caused Ms. Hogan not to attend a Town Council meeting on April 15, 2003. Kim Casci, did, in fact, attend the Town Council meeting.

The First Amendment states:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of people peaceably to assemble, and to petition the Government for redress of grievances.

*U.S. Const. Amend. I.* The "First Amendment, applied to the states through the Fourteenth Amendment, forbids government from restricting the rights of its citizens to speak." *Providence Firefighters Local 799 et al. v. City of Providence, et al., 26 F.Supp 2d 350, 353 (D.R.I. 1998).* Government is prohibited from adverse action against an individual if its reason for doing so infringes a constitutional right such as the First Amendment. *Perry v. Sindermann, 408 U.S. 593, 597 (1972).*

A cause of action under §1983 requires that "the conduct complained of has been committed under color of state law, and this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Forbes v. Rhode Island Brotherhood of Correctional Officers et al., 923 F.Supp 315, 321 (D.R.I. 1996).* Therefore, in order to succeed in her §1983

claim against Captain Barlow, Ms. Hogan must show that she was denied her First Amendment rights relating to the Town Council meeting that she allegedly did not attend as the result of a telephone conversation that took place between Captain Barlow and another person, Ms. Casci.

In order to assert her claim that her First Amendment rights were violated, Ms. Hogan must also establish that she has standing to bring her claim by showing that she "suffered an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Providence Firefighters Local 799 et al*., *26 F.Supp 2d, at 354*. "An injury in fact" is one of the three irreducible, minimum constitutional elements of standing." *Id*. Ms. Hogan's vague claims that she did not attend the Town Council Meeting as the result of the taped telephone conversation between Captain Hogan and someone else do not establish a concrete and particularized legally protected interest, therefore she has no standing to bring this claim.

Additionally, The First Circuit has stated, "[w]here a chilling effect is speculative, indirect or too remote, finding an abridgment of First Amendment rights is unfounded." *Sullivan v.* Carrick, *888 F.2d 1, 11 (1st. Cir. 1989),* citing *United States v. Harriss*, *347 U.S. 612, 626 (1954).* "[T]he mere allegation [of harm] does not amount to satisfying the causation requirement of a Section 1983 action." *Id*., citing *Gordon v. Warren Consol. Bd. of Educ., 706 F.2d 778, 780 (6th Cir. 1983)*; accord *Laird v. Tatum, 408 U.S. 1, 13 (1972).* Although Ms. Hogan did not specifically state that her speech was "chilled", her claims can be analogized to the claims in *Sullivan*.

In *Sullivan*, Plaintiff claimed a violation of First Amendment rights pursuant to 42 U.S.C. §1983 after he was allegedly alarmed and afraid after receiving notice of a formal disciplinary hearing against him. *Sullivan,* 88 F.2d 1 at 4. The First Circuit said "[t]o show a *First*

*Amendment* violation in this context Sullivan must alleged that his speech was in fact chilled or intimidated by [the] letter. He does neither in his complaint. Absent such an allegation, no violation occurred." *Id.* at 10-11. The Court went on to state that "defendant's mere allegation that he was harmed does not amount to satisfying the causation requirement of a Section 1983 action." *Id. at 11*.

Ms. Hogan's vague First Amendment claims against the instant Defendants can be analogized to the *Sullivan* claims. Ms. Hogan vaguely claims that the conversation between Captain Barlow and Kim Casci prevented her from appearing at the April 15, 2003 Town Council meeting in support of Ms. Casci, who, in fact, did attend the meeting.

Ms. Hogan's claim that she did not attend a Town Council meeting because of knowledge of the taped conversation is, at best, contrived. Apparently, Plaintiff is alleging that she would have, if given the chance, have spoken at the meeting. Even if this were true, Plaintiff had many opportunities to convey whatever message she intended to speak. To argue that her failure to attend rises to the level of a violation of her rights under the First Amendment is legally invalid.

Defendants also submit that Ms. Hogan's First Amendment rights were not violated because Captain Barlow did not suggest that Ms. Hogan not attend the Town Council meeting, rather, he suggested that Ms. Casci not attend the meeting[4]. Ms. Hogan's claims are simply too remote.

Even if Ms. Hogan argues that she had some sort of "'associational' or 'representational' standing, which permits organizations in certain circumstances, to premise standing entirely upon injuries suffered by their members, " (*Providence Firefighters Local 799 et al.,26 F.Supp*

---

[4] Ms. Casci did, in fact, attend the Town Council meeting following her telephone conversation of April 12, 2003 with Captain Barlow.

*2d at 355*), her §1983 claim against Captain Barlow must fail. There was no injury claimed or suffered by Ms. Casci, therefore, Ms. Hogan has no "representational standing" to make a §1983 claim against Captain Barlow.[5]

Under Count I, Plaintiffs' also allege a 1983 claim against the City of East Providence. However, "in order to have a viable *§ 1983* claim against a municipality, a state actor must first commit an underlying *constitutional violation*." *Pittsley v. Warish, 927 F.2d 3, 9 n.4 (1st Cir. 1991) (emphasis added) citing Monell v. Dep't Soc. Servs., 436 U.S 658, 690-91 (a finding that a state actor violated an individual's constitutional right is prerequisite to finding a municipality liable under § 1983). See also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (if a state actor does not impose a constitutional injury, "it is inconceivable that [the City] could be liable").*

Since Ms. Hogan does not have a viable §1983 claim against Captain Barlow as a state actor, so too, must her related claim against the City of East Providence fail.

Further, even assuming, arguendo, that Plaintiffs could succeed in demonstrating the infliction of a constitutional injury by Captain Barlow, Plaintiffs must then also demonstrate: 1) that the municipality's failure to train or supervise that individual amounted to a "deliberate indifference" to the rights of persons with whom the police come into contact; 2) that the failure to train or supervise represents a "policy" for which the city is responsible; and 3) the policy actually *causes* the injury. *City of Canton, Ohio v. Harris, 489 U.S. 378, 389-90 (1989).*

---

[5] Additionally, an argument can be made that Captain Barlow was not on duty when he took the telephone call from Kim Casci on April 12, 2003. "The private conduct of a public employee is not actionable under Section 1983." *Forbes v. Rhode Island Brotherhood of Correctional Officers et al., 923 F.Supp 315, 321 (D.R.I. 1996).* An argument can be made that since the telephone conversation occurred on a Saturday morning, April 12, 2003, while Captain Barlow was off duty, he was not acting under "color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id*.

In the instant case, even assuming the plaintiffs could establish some constitutional injury caused by Captain Barlow, there is no evidence that the Town failed to properly train the Defendant police officer and that this failure amounted to "deliberate indifference". *See Flowers v. Fiore, 239 F.Supp.2d 173, 179 (D.R.I. 2003) quoting Guadreault v. Municipality of Salem, Mass., 923 F.2d 203, 209 (1st Cir. 1990) ("summary judgment is manifestly appropriate where plaintiff fails to offer even a scintilla of evidence that the municipality failed to train its officers and that the failure to do so constituted deliberate indifference.")*

***B. Count II-Libel and Defamation***

Under Count II, Plaintiffs allege state law claims of libel and defamation against Defendants, Walter Barlow, Jr. and the City of East Providence. Discovery has revealed that Ms. Hogan alleges she was libeled/defamed on three separate occasions. The first was the April 10, 2003, East Providence Post letter from Captain Barlow in response to Janice Meek Griffin's letter (*Exhibit B*). The second was the internet letter from Captain Barlow in response to Janice Meek Griffin and RIPAWS letter regarding the East Providence Animal Shelter (*Exhibit C*). The third was the April 12, 2003 taped conversation between Captain Barlow and Kim Casci. (*Exhibit D*).

With a claim for defamation, plaintiff is required to provide the following elements: "'(1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages***'" *Alves v. Hometown Newspapers, Inc., d/b/a The Kent County Daily Times et al., 857 A.2d 743, 750 (R.I. 2001),* quoting *Cullen v. Auclair, 809 A.2d 1107, 1110 (R.I. 2001).* Such a statement in print or writing, signs or pictures is considered to be libel. *Lyons et al. v. Rhode Island Public*

Employees Council 94, et al., *516 A.2d 1339, 1343 (R.I. 1986)*[6]. Rhode Island law requires that the plaintiff "bear[] the burden of providing that a defendant communicated a 'false and defamatory' statement about him or her." Alves, *857 A.2d at 750.*

A defamatory statement is one where it is shown "that the statement is 'false and malicious, imputing conduct which injuriously affects a [person's] reputation, or which tends to degrade him [or her] in society or bring him [or her] into public hatred and contempt ***".'" Id., quoting DiBattista v. State, *808 A.2d 1081, 1088 (R.I. 2001) (citations omitted).* The plain and ordinary meaning and the context of the publication are taken into account in considering whether or not a statement or conduct is defamatory." Id.. The determination of "[w]hether the meaning of a particular communication is defamatory is a question of law for the court to decide rather than a factual issue for a jury to determine." *Cullen v. Auclair*, 809 A.2d 1107, 1110 (R.I. 2002).

Although Plaintiffs do not specifically refer to claims of libel per se within the Complaint, within Plaintiff's Statements of Elements of Claims, there is an allegation that the statements are "actionable per se". See *Plaintiff's Statements of Elements of Claims*. Rhode Island "has held that for statements to qualify as libel per se, the 'publication [must] impute[] insolvency, financial embarrassment, unworthiness or credit, or failure in business to a plaintiff, *** but to make them so *** it is essential that such imputation relate to or affect the plaintiff in his business.'" *Swerdlick v. Koch, 721 A.2d 849, 861 (1998),* quoting *Andoscia v. Coady*, *210 A.2d 581, 584 (1965).* Defendants argue that, as argued below, Plaintiffs cannot show any proof of damages or libel per se.

---

[6] Appeal after remand, *Lyons v. Rhode Island Pub. Employees Council 94*, 599 A.2d 130 (RI 1989); Writ of Cert den'd, *Lyons v. Rhode Island Pub. Employees Council 94*, 493 US 892 (1989).

Defendants expect to prove that in all three instances the statements were not false and defamatory. Each statement can be substantiated as truthful in the context within which they were written. Further, notwithstanding the truth of the statements, and given the context, the "plain and ordinary meaning" of each of those statements is not defamatory.

Ms. Hogan has alleged that there were defamatory statements in the East Providence Post letter (Exhibit B). Defendants argue that, taken in the context of Captain Barlow's response to Janice Meek Griffin, none of the statements were false. Further, except where it is noted that Volunteers Saving Animals had changed their corporation name to RIPAWS, there is no reference to Ms. Hogan or to RIPAWS, Inc. in this letter to the East Providence Post. See *Exhibit B, Page 5.*

Ms. Hogan has alleged that there were defamatory statements in Captain Barlow's letter on the internet (*Exhibit C).* In this letter, Captain Barlow is again responding to the letter from Ms. Griffin, plus, he is also referring to a recent e-mail from the director of RIPAWS. Again, Defendants argue in response that none of the claims were false. There was no reference to Ms. Hogan. While Ms. Hogan may not agree with the statements, there was factual basis behind each of the statements.

Finally, Ms. Hogan alleges defamatory statements in the transcribed portion of the telephone conversation between Ms. Casci and Captain Barlow (*Exhibit D).* Again, within the actual transcript, there is no specific reference to Ms. Hogan or to RIPAWS, Inc. Further, these comments must be taken in the context of this "private" telephone conversation between Captain Barlow and Ms. Casci.

Additionally, it was Ms. Hogan, and her volunteer group that deliberately, and clearly, chose to publish this conversation to Jim Taricani, a reporter for Channel 10 News, with the full

knowledge that he would use the tape in a news broadcast of some kind. It is difficult to fathom Plaintiff's allegations of defamation relating to the transcribed telephone conversation of April 12, 2002, since Plaintiff herself effectively released the taped telephone call to the public, and knowingly subjected herself to any publicity generated by said tape recording.

Defendants will also argue that the Plaintiff will be unable to substantiate any damages that she suffered as the result of the alleged three instances where she is claiming that she was defamed.

***C. Count III-Emotional Distress***

In Count III, plaintiff claims that "the City of East Providence and its agent, Walter Barlow, Jr. did willfully and intentionally inflict grave and severe emotional distress upon the plaintiff, Brenda Hogan". See *Plaintiff's Complaint, Paragraph 13.* She goes further to state that she was "compelled to incur grave expense for her care and treatment, was compelled to endure great pain and suffering and was otherwise greatly damnified. *Id. Paragraph 14*.

In recognizing the tort of intentional infliction of emotional distress, the Rhode Island Supreme Court has generally followed the Restatement (Second) on Torts. *Curtis v. State Department Children and their Families, 522 A.2d 203, 208 (R.I. 1987); Champlin v. Washington Trust Co., 478 A.2d 985, 989 (R.I. 1984)*. Thus, under Rhode Island law, in order to maintain an action for intentional infliction of emotional harm:

> (1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe. *Champlin, 478 A.2d at 989.*

Rhode Island requires the Plaintiff prove "physical symptomatology resulting from the alleged improper conduct." *Vallinoto v. DiSandro et al., 688 A.2d 830, 838 (R.I.1997)*. Rhode Island has recognized the subjective nature of such claims for emotional distress and the possible

hardship imposed on defendants in attempts to defend such claims, so, in order to maintain a claim for the intentional infliction of emotional distress, the plaintiff must also provide at least some proof of medically established physical symptomatology. *Curtis, 522 A.2d at 208; Champlin, 478 A.2d at 989. Hawkins v. Scituate Oil Co., Inc., 723 A.2d 771, 773 (R.I. 1999)*; *Vallinoto v. DiSandro, 688 A.2d 830, 838-40 (R.I.1997); Clift v. Narragansett Television L.P., 688 A.2d 805, 812-14 (R.I.1996).* The absence of such physical ailment is fatal to a plaintiff's claim for emotional distress. *Clift v. Narragansett Television L.P., 688 A.2d 805, 813 (R.I. 1996) citing Reilly v. United States, 547 A.2d 894 (R.I.1988)("In order for the plaintiffs to have avoided summary judgment, they were required to allege in their complaint and demonstrate not only extreme and outrageous conduct on the part of [defendant], but also the existence of resulting physical symptomatology); Marchetti v. Parsons, 638 A.2d 1047, 1052 (R.I.1994) (recovery for negligent infliction of emotional distress requires a showing of accompanied physical symptomatology); Reilly v. United States, 547 A.2d 894, 895 (R.I.1988) (under Rhode Island law, plaintiff must suffer physical symptomatology to recover damages for negligent infliction of emotional distress).*

There must be proof that the "alleged physical ills were the proximately caused by" the alleged improper conduct. *Vallinoto*, 688 A.2d 830, 838 (R.I.1997). Further, Rhode Island has "steadfastly required that a plaintiff seeking recovery in a claim for tortious infliction of emotional distress must establish a causal relationship between his or her physical and psychic injuries and the defendant's misconduct by expert medical testimony testimony." *Shouclair v. Brown University*, 917 A.2d 418, 432-433 (R.I. 2007). However, expert testimony is not an absolute bar, and exceptions have been made where the court reasoned that "'an ordinary lay person or trail juror would be capable of determining without the aid of expert medical testimony

whether emotional distress and humiliation could ordinarily and naturally follow...'" Id, quoting Adams v. Uno Restaurants, Inc. *794 A.2d 489, 493 (R.I. 2002).*

Defendants argue that, in the first instance, Plaintiff's claims relating to emotional distress stem from the same set of facts and circumstances as her claims relating to her First Amendment and defamation claims. Given Defendants arguments outlined above, Plaintiff cannot show intentional or reckless conduct on the part of Captain Barlow or the City of East Providence.

Defendants argue that Ms. Hogan admittedly did not receive direct medical treatment for her alleged emotional distress. In this instance, Plaintiff's self serving statements relating to her emotional distress are not enough. Further, the ordinary lay person or jury will not be able to make the connection that her self serving complaints were caused by the alleged actions of the instant Defendants.

**VII. PENDING MATTERS**

None.

**VIII. ESTIMATED TIME OF TRIAL**

It is estimated that the time required to present the defendants' case will take one to two days. In any event, the trial should be completed in three to four days.

Defendants,
By their Attorneys,

/s/ Marc DeSisto
Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that this document has been filed electronically on the 2nd Day of July, 2007, and is available for viewing and downloading from the ECF system, and that the Counsel of Record listed below will receive notice via the ECF system:

Bernard J. Healy, Esq.
Law Offices of Bernard J. Healy,
750 East Avenue, Pawtucket, RI 02860
(401) 721-2260
bphealy@verizon.net

/s/ Marc DeSisto