UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BRENDA HOGAN and RIPAWS, INC.

VS C.A.: 06-149T

WALTER BARLOW, JR., and THE CITY OF
EAST PROVIDENCE

PRE-TRIAL MEMORANDUM OF BRENDA HOGAN AND RIPAWS, INC.

## I. PARTIES

| | |
|---|---|
| Plaintiffs: | Brenda Hogan and RIPAWS, INC. |
| Plaintiff's Attorney: | Bernard P. Healy, Esq., 750 East Avenue, Pawtucket, RI 02860 |
| Defendants: | Walter Barlow, Jr., a Captain in the employ of the East Providence Police Department and the City of East Providence itself. |
| Defendants' Attorney: | Marc DeSisto, Esq., 211 Angell Street, P.O. Box 2563, Providence, RI 02906 |

## II. STATEMENT OF FACTS

The Plaintiff, Brenda Hogan, become involved with the East Providence Animal Shelter in the mid 1990s. The East Providence Animal Shelter is a facility of the city. The Animal Shelter houses stray animals found within the city. Traditionally, two groups worked at the shelter. The first group was the municipal employees responsible for the day to day maintenance of the shelter. These were the animal control officer,

who also had duties in reference to investigating complaints of vicious animals, catching strays, etc. In addition, there was a pound keeper and various assistant pound keepers. The city personnel were responsible for the maintenance of the facility itself, the feeding of the animals, the cleaning of cages, and various other maintenance duties. In addition to the city personnel, volunteers traditionally had an important function at the shelter. The volunteers would oversee the adoption of stray animals. The volunteers would also provide day to day animal care not provided by city personnel. For example, the volunteers would very often walk the animals. The volunteers also provided veterinary care to the animals in the shelter. When Ms. Hogan first became involved with the shelter, the volunteer group there was the Volunteer Services for Animals (hereafter VSA). The Volunteer Services for Animals is a statewide organization with various municipal chapters. At the time of Ms. Hogan's initial participation with the group, Marybeth Bowden was the head of the East Providence chapter of VSA.

There was long standing animosity between the volunteer group and the city employees. There was at heart a philosophical difference between the two groups. The volunteers, regardless of the aegis under which they acted resisted the euthanasia of stray animals. The municipal employees were not adverse to the euthanasia of strays that were not easily adoptable. As a corollary, the volunteers, who oversaw adoption, wanted to assure that all animals were placed in an appropriate home and environment. The volunteers would question the fitness of various adopting people. The staff, who were again more interested in the speedy disposition of animals, considered the volunteers to be far too restrictive in their oversight of the adoption process.

The shelter staff provided the bare minimum of care to animals housed at the shelter. The volunteers provided supplemental care to the animals, primarily veterinary care. This was a very significant expense, and required outlays from the volunteers. When Ms. Hogan became involved with the Volunteer Services for Animals, her primary duty was as a fundraiser. Gradually, Ms. Hogan also began to do some work at the shelter itself, primarily on weekends.

There was always, between the city personnel and the volunteers, arguments regarding record keeping responsibilities. Under law, record keeping is clearly the responsibility of the city personnel. In reference to animals adopted, the volunteers did have a responsibility to provide city personnel with documentation surrounding the adoption, including the name of the adopter, the date of adoption, etc. As a general matter, the volunteers, long before Ms. Hogan's involvement, attempted to keep a record of all animals housed at the pound. There was a continuing controversy regarding the transfer of information from city personnel to the volunteers. There was correspondence between the two groups regarding information about animals housed there. This was an issue which was never resolved.

During the time relevant to this action, Gary Dias was the Chief of the East Providence Police. While the shelter employees, that is the animal control officer and the pound keepers were under the jurisdiction of the maintenance department of the City of East Providence, the general oversight and control of the shelter itself rested with the police department, and particularly the Chief of Police. Chief Dias, during his tenure in that position, assigned various liaison officers to the shelter. In addition, Chief Dias propounded rules and regulations which outlined the respective responsibilities of

the volunteers and the city staff at the shelter. For whatever reason, there was always, before and after Ms. Hogan's involvement, ongoing animosity between the city personnel and the volunteers.

In 1999, Ms. Hogan became the head of the East Providence Division of Volunteer Services for Animals. In that capacity, she became unofficially the liaison between the volunteers and the city personnel. She continued in that capacity until her expulsion from the shelter on September 6, 2002.

Brenda Hogan's initial goal, upon assuming the duties of liaison, was to end, and if not successful in that, to reduce the animosity between the volunteers and the city personnel. Unfortunately, she was not successful in that endeavor. The very real animosity between the two groups continued during Ms. Hogan's involvement with the shelter. Brenda Hogan also attempted to privatize the shelter, that is to propose to the city that all aspects of the shelter be done by a volunteer group. The state organization, Volunteer Services for Animals, did not have the capacity to oversee a private shelter. Ms. Hogan therefore formed another volunteer group which was incorporated and was entitled the East Providence Volunteers Saving Animals. The volunteers in early 2000 were working at the shelter under that title. It was under the name of East Providence Volunteers Saving Animals that Ms. Hogan filed and presented to the East Providence city council a plan to privatize the shelter.

When Brenda Hogan assumed the leadership of the volunteers, she scrupulously followed the established chain of authority. In that capacity, she was often in contact with Chief Dias regarding conditions at the shelter. She also, as was her right, would

advocate for the animals at the shelter with the city council, the city manager and the mayor.

Ms. Hogan in 2000 and 2001 was concerned regarding the physical conditions at the shelter. She therefore contacted the Department of Environmental Management. There had always been complaints regarding the physical maintenance of the shelter itself and the shelter's failure to maintain standards as mandated by Rhode Island's Department of Environmental Management. In fact, the city and the Department of Environmental Management, in response to earlier complaints, had in 1999 entered a consent decree regarding conditions at the shelter. The Department of Environmental Management, and specifically Dr. Hannafin, a veterinarian in the employ of the department, inspected the shelter in 2002 and found several deficiencies at the shelter.

The Defendant, Walter Barlow, Jr., in February 2002, had been appointed by Chief Dias to serve as the official city liaison for the animal shelter. Captain Barlow harbored long-standing animosity against Ms. Hogan. He began to amass any and all complaints against the volunteers and Ms. Hogan. In July, 2002, Captain Barlow delivered a report to Chief Dias and various other personnel in the employ of the city which recommended the immediate termination of the volunteer's involvement with the shelter. In August, 2002, the Rhode Island Department of Environmental Management issued its report finding again that the East Providence shelter was not in compliance with the state law. City personnel blamed Ms. Hogan for the findings of Dr. Hannafin. In response, the city manager, then Paul Lamont, prepared a letter which terminated Brenda Hogan and another volunteer, Alicia Holder, as volunteers at the shelter. Captain Barlow hand delivered the letter to Ms. Hogan.

Brenda Hogan honored the letter of termination. That is, she thereafter was not actively involved in providing volunteer services at the shelter. Ms. Hogan did, however, continue to provide indirectly services for the benefit of the animals at the shelter. Ms. Hogan formally changed the non-profit corporation, East Providence Volunteers saving Animals to RIPAWS, Inc. Under the aegis of RIPAWS, Inc., Brenda Hogan continued to attempt the adoption of various animals, and particularly stray dogs, at the shelter. During this time frame, Ms. Kim Casci became involved as a volunteer at the shelter. In addition, Charles King, another volunteer, was allowed to continue providing services to the animals at the shelter. Ms. Casci would often meet with Brenda Hogan to consider disposition of the animals at the shelter and specifically three to five dogs. Ms. Hogan was prepared to adopt the animals herself in the event that no other persons could be found to adopt. Captain Barlow, who continued his oversight of the shelter, had determined that these three to five dogs should not be adopted and were in fact vicious animals which should be killed. Initially, Captain Barlow determined that Ms. Hogan, and quite possibly Ms. Hogan alone would be allowed to adopt the animals. This changed in the latter part of January, 2002. Brenda Hogan at that time had sent an e-mail letter to persons affiliated or interested in RIPAWS, Inc. regarding the adoption of these dogs. She sought assistance of that group in the adoption process. In the body of that letter, Ms. Hogan had indicated that Captain Barlow knew little or nothing about animal care, with the statement to the effect that Captain Barlow knew as much about animals as Ms. Hogan knew about quantum physics. This apparently enraged Captain Barlow. He at that point withdrew his initial permission to allow adoption of these animals by Ms. Hogan. At that time, Captain

Barlow began to become overtly hostile to Brenda Hogan in his conversations with Ms. Casci. Kim Casci reported these conversations to Ms. Hogan who became alarmed by them.

Brenda Hogan during this time frame became more alarmed regarding Captain Barlow's statements about her. She therefore contacted Chief Dias as well as the Rhode Island State Police to file complaints. She received absolutely no response from either the Rhode Island State Police or the East Providence Police in reference to her complaints.

Control of the animal shelter did remain, within the City of East Providence, a controversial matter. On March 27, 2003, a woman, Janice Meek Griffin, wrote a letter to the East Providence Post concerning operations at the animal shelter and the presence or absence of the volunteers at the shelter. On April 10, 2003, the Defendant, Walter Barlow, Jr., responded to that letter. In addition to the published response in the East Providence Post, Captain Barlow also posted a lengthier and more aggressive response on the internet. The Plaintiffs contend that the Captain's letters were libelous. In addition, Ms. Hogan had provided Kim Casci with a recorder which would enable Ms. Casci to record the conversations between her and Captain Barlow. On April 12, 2003, the Defendant, Walter Barlow, had a conversation with Ms. Casci in which he overtly threatened Ms. Hogan and her organization. He urged Ms. Casci not to attend a scheduled meeting of the East Providence Town Council. He indicated that he was going to destroy Ms. Hogan and her organization and made various other threats.

Brenda Hogan has now commenced this present action against Walter Barlow, Jr. and the City of East Providence.

## III. CLAIMS OF THE PLAINTIFF

Brenda Hogan and RIPAWS, Inc. have made essentially three claims. The first claim is pursuant to 42 USC 1983. The burden is upon Brenda Hogan and RIPAWS, Inc. to establish that the conduct of Captain Barlow and the City of East Providence was committed by a person acting under color of state law and that the conduct has deprived the Plaintiffs of a federal right secured either by federal law or the Constitution. DiCiantis vs. Wall, 795 A2d 1121 (R.I. 2002). The Plaintiffs are also alleging that the Defendants issued statements about them about them which were false, malicious and imputing conduct which injuriously affected their reputation, and which tended to degrade them and bring them into public hatred and contempt. Elias vs. Youngken, 493 A 2d 158 (R.I. 1985). The Plaintiffs contend that the response of Captain Barlow to the letter of Ms. Griffin was a malicious statement which tended to injure both Ms. Hogan and RIPAWS, Inc., exposing them to public hatred, contempt and ridicule. In addition, Brenda Hogan is asserting that in reference to the telephone conversation of Ms Casci and Captain Barlow of April 12, 2003, the Defendants are guilty of intentional infliction of emotional distress. To establish intentional infliction of emotional distress under Rhode Island law, the Plaintiffs must prove that Defendants were guilty of extreme and outrageous conduct that intentionally or recklessly caused severe emotional damages to Brenda Hogan, Inc. In essence, the Plaintiffs must prove that the conduct of the Defendant was extreme and outrageous, and that there was a causal connection between that conduct and the emotional distress. The burden is also

upon the Plaintiffs to establish that the emotional distress suffered was severe. Marques vs. Fitzgerald 99 Fed 3d 1 (1st Cir. 1996). There are some Rhode Island decisions which also add as a requisite element of proof that there be at least some proof of medically established physical symptomatology. Swerdlick vs. Koch, 721 A2d 849 (R.I. 1998).

## IV. DAMAGES

The Plaintiffs have two specific claims for damages. The first, as to Brenda Hogan, is an award of compensatory damages based upon mental anguish, humiliation, and emotional distress secondary to the acts of the Defendants. In addition, as against the Defendant, Walter Barlow, Jr., Brenda Hogan seeks exemplary/punitive damages. RIPAWS, Inc. is seeking recovery for lost funds secondary to the libel and slander, which funds had earlier been received by the organization in the form of donations. As a practical matter, subsequent to April 2003, RIPAWS, Inc. has received little or no funds for animal protection and animal rescue, its primary functions. The Plaintiffs are also, pursuant to the claim under 42 USC 1983 seeking attorneys fees.

## V. ISSUES

1) Did the defendants infringe upon and deprive Plaintiffs of rights, privileges or immunities secured by the Constitution or laws of the United States.
2) Were the statements of the Defendant, Walter Barlow, Jr., libelous.
3) Is Brenda Hogan entitled to recover for emotional distress on a theory of intentional infliction of emotional distress without expert medical testimony.
4) Are the Defendants entitled to introduce any evidence of a prior investigation involving an ex-husband of Brenda Hogan and/or documents regarding complaints against Brenda Hogan in reference to her involvement with the animal shelter.

## VI. ARGUMENT

In order to state a cognizable claim under the Federal Civil Rights Act, the Plaintiffs in this action must present facts to establish that the Defendants, while acting under color of state law deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States. The statute is itself not a source of substantive rights and provides only a remedy, with the substantive rights to be found in the Constitution or federal law. Nicholson vs. Moran, 835 Fed Supp 692 (D. R.I 1993). There is no question that Walter Barlow, Jr., the city employee, was acting under color of state law. It was only in his official capacity as an East Providence police officer that he made the statements and threats at issue in this case. In this case, the actions of Captain Barlow deprived the Plaintiffs of their liberty rights as well as first amendment rights. A cursory review of the telephone conversation at issue demonstrates that

Captain Barlow was intent on RIPAWS members not attending a city council session scheduled a few days after. Moreover, threats to destroy or kill a person certainly deprive that person of security in their home and liberty. In deLeiris vs. Scott, 642 Fed Supp 1552 (D.R.I. 1986) this Court recognized as a federal right an identifiable liberty interest in personal information. In this case, the city and its agent actively threatened to destroy a person and an organization. Threats, intimidation and harassment which are intended to, and in fact do place a chill upon constitutional rights are actionable. Pursuant to 42 USC Section 1983. It must be borne in mind that the city is not vicariously liable on a theory of respondeat superior. In this case, the City of East Providence had a specific policy of hostility to Ms. Hogan and her organization. This hostility was so widespread as to become a custom and practice of the city government itself. St. Louis vs. Praprotnik, 485 U.S. 112, 108 S. Ct. 9 15, 99 L. Ed. 2d( 1988).

The correspondence of Captain Barlow, while it does not mention Brenda Hogan by name, is clearly directed against her. Captain Barlow refers to various groups which he alleged had earlier refused to assist the shelter as a result of a hostile environment caused by Volunteers Saving Animals. Captain Barlow also blames the deficiencies at the shelter upon conduct of the volunteers, including Ms. Hogan. Captain Barlow further alleges that RIPAWS and/or Brenda Hogan were improperly taking animals out of state in violation of state law. More pointedly, Captain Barlow states that animals, while under the care of the volunteers, were forced to languish bleeding or in pain. He refers to deception and discrimination which existed at the shelter before September 2002. He says disruptive and unmanageable people were the only ones that were unwelcome at the facility. The obvious implication is that Ms. Hogan and RIPAWS,

Inc. were both disruptive and unmanageable. Captain Barlow in his conclusion on the e-mail, indicates that RIPAWS, Inc. and Brenda Hogan were guilty of falsehoods, and specifically states that there was a liar and that he had proof. Many of the statements are actionable per se. The statements were all materially false, and the impact of the statement on a reader's mind would be different from the effect that a true statement would produce. These allegations did not constitute merely minor inaccuracies. Quantum Electronics Corporation vs. Consumer's Union of U.S., Inc. , 881 F. Supp 753 (D.R.I. 1995).

In reference to her claim of intentional infliction of emotional distress, Brenda Hogan concedes that she will not be presenting any expert medical testimony to establish her emotional distress. In her action for libel, medical evidence is not, itself necessary. When considering intentional infliction of emotional distress as a distinct cause of action, an argument can be made that expert evidence is in fact a necessary element of the cause of action itself. Vallinoto vs. DiSandro, 688 A 2d 830 (R.I. 1997). Plaintiff contends that medical evidence is not a necessary element of the claim. A threat to kill is, plaintiff contends, per se outrageous and is an event which would naturally cause one emotional distress. In Hawkins vs. Scituate Oil Co.Inc., 723 A 2d 771 (R.I. 1999) the Supreme Court of Rhode Island allowed, without medical testimony, evidence of emotional distress to be introduced where the Plaintiffs living arrangements had become impossible secondary to oil flooding their home. The Supreme Court in essence held that the events so naturally would cause distress that medical evidence under those circumstances was unnecessary. In Adams vs. Uno Restaurants, Inc., 794 A 2d 489 (R.I. 202) the Supreme Court of Rhode Island in fact

allowed a claim for intentional infliction of emotional distress to proceed without the necessity of either medical evidence or physical symptoms. In essence, the Supreme Court adopted a rule whereby a claim for emotional distress and humiliation when made with objective facts to substantiate such a claim, does not require the additional elements of proof. The Plaintiff contends that in this case the language of Captain Barlow is an objective fact which substantiates Ms. Hogan's claim and that this claim should be allowed to proceed to a jury.

As a final note, in the course of discovery, the Defendant, Captain Barlow, has indicated that he was involved in an investigation of bank robberies which were committed by the Plaintiff's ex-husband. According to Captain Barlow, that may have been a motivating reason for his attitude toward Brenda Hogan. The Plaintiff contends that no such evidence should be admitted at the time of trial. The same would be highly prejudicial and is completely irrelevant to the claim. In addition, Captain Barlow in compiling his report submitted to Chief Dias and various city personnel attached thereto a number of unsubstantiated complaints against Ms. Hogan. These, Plaintiff contends, are not reliable documents and should not be admitted in evidence at the time of trial. They were generated at a time when there was active animosity between volunteers and shelter personnel and the reliability of the underlying allegations are dubious. If Defendant seeks to prove that Ms. Hogan and/or the volunteers discriminated against individuals for any reason, the report should not be submitted as evidence thereof. Rather, direct evidence of the alleged discrimination should be presented via live testimony.

**G. PENDING MATTERS**

There are no pending matters at the present time.

**H. ESTIMATED TIME OF TRIAL**

The Plaintiffs estimate that the trial will take three to five court days.

The Plaintiff
BRENDA HOGAN and
RIPAWS., INC.
By their attorney:

____________________________
s/ Bernard P. Healy #2072
750 East Avenue
Pawtucket, RI 02860
(401) 721-2260

CERTIFICATION

I hereby certify that on this date of September 20, 2007 a true copy of the herein was sent to Marc DeSisto, Esquire at DeSisto Law, 211 Angell Street, PO Box 2563, Providence, RI 02906-2563 by first class mail, postage prepaid.

s/ Dorothy Healy